UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL ERIAS STELLY, SR., | No. C 08-01997 CW (PR) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| DR. ELAINE TOOTELL, et al., | |
| Defendants. | |

INTRODUCTION

This is a federal civil rights action filed pursuant to 42 U.S.C. § 1983 by a pro se state prisoner. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

BACKGROUND

The following facts are undisputed unless noted otherwise. Plaintiff, a former inmate at San Quentin State Prison (SQSP), alleges that Defendants, supervisory medical personnel at SQSP, were deliberately indifferent to his serious medical needs, thereby violating his Eighth Amendment rights. Defendants never treated Plaintiff, but rather acted as supervisors of other

medical personnel who provided direct medical treatment to the inmates. Plaintiff claims that Defendants failed to order prompt and appropriate medical and mental health examination and treatment for him after having learned of his medical complaints through his inmate grievance forms. More specifically, Plaintiff alleges that (1) Defendant Elaine Tootell, Chief Medical Officer at SQSP, never responded to his inmate grievances regarding his medical care; (2) Eric Monthei, Chief of Mental Health at SQSP, ignored Plaintiff's requests for treatment and failed to order his subordinates to render timely medical care; (3) Larry Dizmang, Chief Psychiatrist at SQSP, failed to respond to Plaintiff's requests for help and to order his subordinates to assess Plaintiff's condition or provide treatment; and (4) Timothy Rougeux, former Health Care Receiver Manager, willfully postponed the processing of Plaintiff's request for the assessment of and treatment for medical and mental ailments. (Am. Compl. 3-5.) According to Plaintiff, he suffered from temporal lobe epilepsy, depression, and Hepatitis C. (Id.)

Defendants allege that Plaintiff was at the San Quentin Reception Center from September 2007 to January 2008, and was in San Quentin from January 2008 to January 2009. (MSJ at 3.) Plaintiff disputes this in part, alleging that he was in the Santa Rita Detention Facility from October to December 17, 2007. (Pl.'s Combined Opp. to Mot. to Dismiss and Mot. for Summ. J. (Opp.) at 2.)

2

STANDARD OF REVIEW

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that

3

there is a genuine issue for trial." Fed. R. Civ. P. 56(e). It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The non-moving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the non-moving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Celotex, 477 U.S. at 323.

4

DISCUSSION

Plaintiff alleges that Defendants, who occupy supervisory positions at SQSP, are liable for not ordering prompt and adequate medical and mental health treatment for him.  Although there is no "pure" respondeat superior liability under § 1983, a supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted).  A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  An administrator may be liable for deliberate indifference to a serious medical need, for instance, if he or she fails to respond to a prisoner's request for help.  Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006).

Taking these legal principles into account, even if one assumes as true Plaintiff's allegations that Defendants knew of Plaintiff's medical conditions and failed to respond, Plaintiff's complaint will not survive summary judgment unless he can demonstrate that he had a serious medical condition and that the

5

treatment he received was constitutionally inadequate.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U. S. 825, 837 (1994) (equating standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." Id. Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. See McGuckin, 974 F.2d at 1060. In order to prevail on a claim of deliberate indifference to medical needs, a plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on

6

this course in "conscious disregard of an excessive risk to plaintiff's health." See Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. Id.; Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Defendants have made a showing that there are no material facts in dispute. Plaintiff has not shown facts that preclude summary judgment, as an analysis of each claim based on his stated ailments demonstrates.

A.   Epilepsy

Plaintiff alleges that Defendants failed to order constitutionally adequate care for his epilepsy. (Am. Compl. at 4.) Defendants are entitled to judgment as a matter of law as to Plaintiff's epilepsy claims. First, Plaintiff's allegations that Defendants failed to act when informed of his medical conditions are wholly lacking in specific detail, thereby making it impossible to determine whether Defendants' response to his grievance was unconstitutionally late or inadequate. Indeed, Plaintiff's allegations do not list any details beyond "Inmate Appeal Forms [602's] were submitted to every Medical and Mental Health Department Head/Defendant and the Health Care Manager/ Receiver at San Quentin. None were answered or returned for further processing." (Am. Compl. at 2.) Nowhere does Plaintiff

7

list any specific details, either here or in his other filings, such as the number of grievances submitted, specific dates of submission, or what was contained in such grievances. Plaintiff "readily admits that he cannot be specific about the 602's that were sent to Rougeux, and that he does not know specifically which 602's were sent to any of the Defendants."[1]  (Opp. at 3.) Nor has Plaintiff submitted any copies of the grievances he refers to.  In sum, Plaintiff's allegations are too conclusory and devoid of necessary factual detail for the Court to assess whether he has raised a triable issue of material fact.

Second, Plaintiff admitted at a deposition that Defendants did provide some treatment for his epilepsy:

> Q: Were you taking medication [Dilantin] for [temporal lobe epilepsy] while you were at San Quentin?
>
> A: After a while.  Just before I was discharged, they started giving me my medication regularly, just before I was discharged.  I had already had seizures by that time, a lot of them, a few of them.

(Mot. for Summ. J. (MSJ), Stocker Decl., Ex. A at 47.)  Not only does Plaintiff admit that Defendants provided some treatment, Plaintiff fails to make clear here and in his filings just <u>when</u>

---

[1] Plaintiff contends that this is Defendants' fault.  According to Plaintiff, in June 2008, Defendants changed the grievance procedure which "greatly affected the normal course of processing, and tracking." (Opp. at 3.)  Whatever the merits of this assertion, it fails to account for Plaintiff's lack of recollection regarding the 602s he filed between January and the end of May 2008, or that his failure to submit any copies of the 602s he filed after June 2008, or his failure to give specific details as to what was contained in any of his grievances.

8

he was given medication. "After a while" is unspecific as to time, so Defendants could have started giving him medication at any time after he arrived at San Quentin. "Just before I was discharged" means only that at some inexact point near to his release he started to receive his medication regularly, not that he was utterly deprived of such medication before such time. In fact, evidence submitted by Plaintiff shows that Defendants had diagnosed his epilepsy by at least March 2008, two months, by Plaintiff's reckoning, after he arrived at SQSP. The record also shows that Defendants subsequently prescribed and renewed a prescription of Dilantin. (Am. Compl., Ex. C at 1-2 & 5.) This evidence supports Defendants' contention that he was prescribed Dilantin for his seizure disorder soon after his arrival at SQSP, and continued to receive this medication until he was paroled. (MSJ at 5-6.) On such a record, Plaintiff's claims based on his epilepsy cannot survive summary judgment. The undisputed record shows that Plaintiff received timely and appropriate treatment for his condition, which counters Plaintiff's assertion that Defendants knew of and ignored a serious risk to his health. That he was dissatisfied with his treatment, or had a difference of opinion as to when treatment should have been delivered, is not sufficient to show a violation under § 1983. Accordingly, Defendants' motion for summary judgment as to Plaintiff's claim of failure to treat his epilepsy is GRANTED.

B. Depression

Plaintiff alleges that Defendants ignored his requests for mental health examination and treatment, thereby violating his Eighth Amendment rights. (Am. Compl. at 5.) Defendants are entitled to judgment as a matter of law as to Plaintiff's depression claims. First, as with the allegations relating to his epilepsy claims, Plaintiff's allegations that Defendants failed to act when informed of his medical conditions are wholly lacking in specific detail or documentary evidence, thereby failing to constitute evidence that Defendants' response to his grievance was unconstitutionally late or inadequate.

Second, Plaintiff admitted at a deposition that Defendants did give him a mental health examination and provided some treatment for his depression:

> Q: Did you see a nurse or doctor or some other medical professional while you were at San Quentin to help you with your depression?
>
> A: Well, I talked to some doctors about it, yes, and they did prescribe some things for my depression towards the end of my stay there.

(MSJ, Stocker Decl., Ex. A at 52.) Also, Defendants have submitted evidence, undisputed by Plaintiff, that he was referred for a psychiatric assessment as early as January 2008, id., Ex. B at Medical Chart 0087, that an assessment was conducted on April 30, 2008, id. at 00177-00181, and that Plaintiff was prescribed Remeron for depression on June 23, 2008, id. at 00150. Furthermore, Plaintiff states in a letter to the Court that he

10

was also receiving Paxil as treatment for his depression, though he interpreted this as an indication that his condition is worsening. <u>See</u> Docket No. 16. The undisputed record further indicates that, as of February 2008, Plaintiff asked for and was given Paxil. (Mot. to Dismiss, Stocker Decl., Ex. A, Inmate Grievance 08-12643.) The undisputed record also shows that as of September 2009, Plaintiff stated to medical personnel that he had no depression, and that the "medication really helps." (MSJ, Stocker Decl., Ex. B, Medical Chart 00137.) Plaintiff appears to assert that merely prescribing medication, without providing therapy and counselling, was insufficient. (Pl.'s Statement of Undisputed Facts at 2.)

On such a record, Plaintiff's depression claims cannot survive summary judgment. The undisputed record shows that Plaintiff received timely and appropriate psychiatric examination and treatment for his condition, which counters Plaintiff's conclusory allegation that Defendants knew of and ignored a serious risk to his mental health. That he was dissatisfied with his treatment, or had a difference of opinion as to when treatment should be delivered, is not sufficient to show a violation under § 1983. Accordingly, Defendants' motion for summary judgment as to Plaintiff's depression claim is GRANTED.

C.   Hepatitis C and Liver Biopsy

Plaintiff alleges, without elaboration, that Defendants failed to provide timely medical treatment for his liver

11

condition, thereby violating his Eighth Amendment rights. (Am. Compl. at 4.) It appears from other filings that Plaintiff contends that Defendants should have placed him on a liver-transplant list, and should have taken a liver biopsy. Defendants are entitled to judgment as a matter of law as to Plaintiff's liver treatment claims. First, as with his epilepsy and depression claims, Plaintiff's allegations that Defendants failed to act when informed of his medical conditions are wholly lacking in specific detail or documents, failing to amount to evidence that Defendants' response to his grievance was unconstitutionally late or inadequate.

Second, Defendants have presented evidence that he was not a candidate for Hepatitis C treatment or a biopsy because of the proximity of his parole date, and that there was no indication that he had end-stage liver disease. (MSJ, Stocker Decl., Ex. B, Medical Chart 0057, 0071 & 0077.) Plaintiff questions (1) whether six months before his parole date was insufficient time to perform a biopsy, Opp. at 4, and (2) why Defendants assert that Plaintiff showed no signs of having end-stage liver disease when they ordered Hepatitis A and B vaccines for him, id. at 8. Plaintiff also asserts, without elaboration, that his liver condition "has sustained additional damage" because of Defendants' acts and omissions. (Decl. in Support of Opp. at 4.) Plaintiff's queries and assertions do not preclude summary judgment. As to the first, a difference of medical opinion, such

12

as whether there was sufficient time to order a liver biopsy, does not state a claim under section 1983.  Plaintiff has not shown that his condition was such that an immediate biopsy was medically necessary.  Plaintiff presents no evidence that Defendants knew of and disregarded a serious risk to his health.  As to the second, vaccinations against two different types of hepatitis indicate that medical staff were trying to protect Plaintiff from infection with those forms of hepatitis, rather than that Plaintiff had end-stage liver disease.

On such a record, Plaintiff's liver treatment claims cannot survive summary judgment.  The undisputed record shows that Plaintiff received timely and appropriate examination for his liver condition, which counters Plaintiff's assertion that Defendants knew of and ignored a serious risk to his health.  That he may be dissatisfied with his treatment, or had a difference of opinion as to when treatment should be delivered, is not sufficient to show a violation under § 1983.  Accordingly, Defendants' motion for summary judgment as to Plaintiff's liver treatment claims is GRANTED.

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment (Docket No. 50) is GRANTED as to all claims against all Defendants.  Defendants' motion to dismiss (Docket No. 47) is DENIED as moot.  This order terminates Docket Nos. 47 & 50.  The Clerk shall enter judgment in favor of Defendants, and

close the file. The parties shall bear their own costs.

IT IS SO ORDERED.

DATED: 3/28/2011

*Claudia Wilken*
CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL E STELLY SR, | Case Number: CV08-01997 CW |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| ELAINE TOOTELL et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 28, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Paul Erias Stelly F86444
30 Novato Street, #158
San Rafael,  CA 94901

Dated: March 28, 2011

    Richard W. Wieking, Clerk
    By: Nikki Riley, Deputy Clerk

15